**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dexter Distributing Corporation, et al.,, <br><br>　　　　　Debtors,<br>_____<br>Taylor R. Coleman,<br><br>　　　　　Appellant,<br><br>vs.<br><br>ANMP, et al.,<br><br>　　　　　Appellees.<br>_____ | No. CV 09-1099-PHX-JAT<br><br>BK NO. 2:03-bk-03546-RJH<br><br>Jointly Administered as Case With:<br>　　2-03-BK-03548-RJH<br>　　2-03-bk-04238-RJH<br>　　2-03-BK-04695-RJH through<br>　　2-03-BK-04710-RJH<br>　　2-03-BK-05427-RJH<br>　　2-03-BK-11513-RJH<br>　　2-03-BK-11515-RJH<br>　　2-03-BK-04238-RJH<br>　　2-07-BK-01017-RJH<br>　　2-07-BK-01018-RJH<br>　　2-07-BK-01019-RJH; and<br>　　2-08-BK-05785-RJH<br><br>ADV. NO. 00-0000<br><br>BAP NO. AZ-00-0000<br><br>**ORDER** |

Pending before this Court is Taylor R. Coleman's Emergency Motion for Stay Pending Appeal (Doc. # 4). For the reasons that follow, the Court denies Coleman's motion.

**BACKGROUND**

Coleman is the founder of Castle Megastore Corporation ("Castle"). In 2003, Castle and other related entities owned by Coleman filed voluntary chapter 11 bankruptcy proceedings. In 2004, a plan of reorganization was proposed by the debtors and confirmed by the Bankruptcy Court ("the 2004 Plan").

In March 2007, Castle, Dexter Distributing Corporation, and 1113 Progress Drive, Medford, L.L.C. ("the Debtors") filed a new chapter 11 bankruptcy proceeding. In August 2008, along with the Debtors, the Official Unsecured Creditors' Committee ("the Creditors' Committee"), American National Mortgage Partners ("ANMP"), and Mark A. Franks (collectively "the Proponents"), proposed a plan of reorganization ("the 2008 Plan"). In February 2009, a final version of the 2008 Plan was filed with the Bankruptcy Court. The 2008 Plan provides that: (1) all general unsecured creditors are to be placed into one class, referred to as Class 7; (2) ANMP is treated as having a general unsecured claim in Class 7; (3) Newco, an entity owned by Mark Franks, acquires the Debtors' operating assets in exchange for the payment of $7,374,000.00; (4) a liquidating trust is created for the benefit of the unsecured creditors, and all cash consideration from Newco will be paid and all real estate owned by Castle Realty will be transferred to the trust; (5) the real estate owned by Castle Realty will be marketed for sale or refinance; (6) any cash remaining in the liquidating trust shall be distributed to Coleman and Franks as holders of Class 8 interests in New Castle, and Coleman and Franks' shareholder interests in New Castle will be terminated.

In December 2008, Coleman filed his objections to the 2008 Plan. In May 2009, after an evidentiary hearing was held concerning the confirmation of the 2008 Plan, the bankruptcy court found that the 2008 Plan was proposed in good faith, and that the Plan satisfies the pertinent aspects of the Bankruptcy Code. Accordingly, the bankruptcy court confirmed the 2008 Plan. Shortly thereafter, Coleman filed an appeal to this Court for the review of the bankruptcy court's findings. Coleman also filed an emergency motion for stay pending appeal with the bankruptcy court. In June 2009, the bankruptcy court held a hearing on Coleman's motion to stay. The bankruptcy court subsequently issued a written order denying Coleman's motion to stay, as well as an order confirming the 2008 Plan. On June 22, Coleman filed his Emergency Motion for Stay Pending Appeal with this Court.

## ANALYSIS

Whether to grant or deny a request for a stay is "an exercise of judicial discretion," the proprietary of which is "dependent upon the circumstances of the particular case."

*Virginian R. Co. v. United States,* 272 U.S. 658, 672-73 (1926). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 672. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 129 S.Ct. 1749, 1761 (2009).

In order for this Court to grant or deny a request for a stay, the Court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first of these two factors "are the most critical," and "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Nken*, 129 S.Ct. at 1761 (quoting *Sofinet v. INS,* 188 F.3d 703, 707 (7th Cir. 1999)).

*Likelihood of Success on the Merits*

Coleman argues that the 2008 Plan violates 11 U.S.C. § 1129(a)(3), which provides that "[t]he court shall confirm a plan only if all of the following requirements are met: . . . The plan has been proposed in good faith and not by any means forbidden by law." Specifically, Coleman argues that the Plan lacks good faith because it transfers assets of Castle to Franks, "a conflicted insider," and that the "transaction is devoid of arms-length negotiation." (Doc. # 4 at p. 16.) "The bankruptcy judge is in the best position to assess the good faith of the parties. The finding of good faith will not be overturned unless the opponent of the plan can show that the finding was clearly erroneous." *In re Stolrow's Inc.*, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) (citation omitted).

A review of the evidence before the bankruptcy court, however, supports the bankruptcy court's finding that the 2008 Plan was proposed in good faith. The Proponents presented evidence that the 2008 Plan was not only feasible, but the amount of consideration to be paid by Newco is greater than the operating assets Newco will acquire in exchange. Moreover, there were numerous other plans considered throughout the course of the proceedings, none of which ever materialized, until the 2008 Plan was presented. The 2008

Plan was overwhelmingly supported by the creditors of the estate. Significantly, the record before the bankruptcy court is devoid of any qualified expert or other testimony to suggest that the transaction is materially unfair or substantially less than the fair market value of the business. The mere fact that the 2008 Plan may not produce the greatest possible return of capital does not transform the 2008 Plan into one that violates § 1129(a)(3).

Likewise, even if Franks constitutes an "insider," this in and of itself does not tarnish the 2008 Plan such that it is violative of § 1129(a)(3). The 2008 Plan was approved by a committee consisting of independent directors and, as discussed earlier, the amount of consideration given exceeds the amount of assets obtained. Such evidence, contrary to Coleman's contentions, demonstrates the impartiality of the 2008 Plan. Accordingly, the evidence in the record supports the bankruptcy court's finding that the 2008 Plan was proposed in good faith, and the Court cannot say that the bankruptcy court erred in so concluding.

In a related argument, Coleman argues that the bankruptcy petitions filed in 2007 were not filed in good faith. "Dismissal for a lack of good faith in filing is a matter for the bankruptcy court's discretion." *In re Stolrow's Inc.*, 84 B.R. at 170. Coleman asserts that the purpose of the 2007 bankruptcy filing was not Castle's insolvency, but rather a calculated plan to eliminate Coleman's majority stock interest in Castle. In support of this argument, Coleman points to certain emails and a memorandum from a representative of ANMP purportedly designed to "attack" Coleman. However, even if the Court agrees that such documents evidence a plan on the part of ANMP to eliminate Coleman's majority stock interest–a finding the Court is not making–the evidence in the record before the bankruptcy court demonstrates that the Debtor was both insolvent and unable to pay its obligations coming due. There was testimony before the bankruptcy court that there were significant errors in the 2004 Plan, the unsecured debt was underestimated, and sales projections were unrealistic. As a result of these issues, Castle was faced with impending payments on various properties that it was unable to satisfy. Moreover, the testimony before the bankruptcy court evidenced that Castle attempted to refinance these properties, but to no avail. Consequently,

the Court finds that the 2007 bankruptcy petition was filed for legitimate reasons under the bankruptcy code, and not simply to divest Coleman of his majority interest in Castle.[1]

Coleman next argues what amounts to a corollary of his good faith arguments; namely, that the 2007 bankruptcy petition is essentially an attempt to modify the 2004 Plan in violation of 11 U.S.C. § 1127(b). As the bankruptcy court noted, there is no prohibition in the Bankruptcy Code against successive Chapter 11 filings. Moreover, the evidence in the record before the bankruptcy court demonstrates that the 2004 Plan had serious failings, and as a result there was a need to file the 2007 bankruptcy petition. Because of the tangible and serious problems with the 2004 Plan, the Court finds that the 2007 petitions were not filed simply to circumvent 11 U.S.C. § 1127(b).

Coleman argues additionally that the 2008 Plan produces "a *de facto*, impermissible substantive consolidation" because, Coleman urges, not all of the Class 7 creditors have claims against each of the separate Debtors. (Doc. # 4 at p. 34.) Therefore, "it is *per se* improper to lump such creditors indiscriminately into one class that will share in assets from another Debtor." (*Id.*) "Whether or not a plan of reorganization provides for equality of treatment for each claim or interest of a particular class is a factual determination reviewable under the clearly erroneous standard." *In re Stolrow's Inc.*, 84 B.R. at 172. Coleman ignores, however, that under the 2004 Plan each of the Debtors are jointly liable for the

---

[1] At oral argument, Coleman placed particular emphasis on the bankruptcy court's alleged rejection of an independent examiner's report. However, the examiner's report was not admitted into evidence, nor did the examiner testify. As such, his qualifications to provide expert opinion testimony were never established. In any event, the bankruptcy court found that the evidence propounded by the Proponents was more credible and established that the 2007 bankruptcy filings were made in good faith. Such determinations concerning the credibility of particular witnesses lie within the sound discretion of the bankruptcy court. The Court finds that the bankruptcy court did not err by finding the evidence of Proponents more credible. *See In re Johnston*, 321 B.R. 262, 287 (Bankr. D. Ariz. 2005) ("To reverse on the basis of an evidentiary ruling . . . the Court must conclude not only that the bankruptcy court abused its discretion, but also that the error was prejudicial.") (citing *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1032 (9th Cir. 2003)).

unsecured claims. As such, the fact that a particular Class 7 creditor may only have a claim against one of the Debtors is immaterial.

Coleman next argues that the 2008 Plan permits impermissible third party releases and contains improper exculpations. However, based upon the evidence before the bankruptcy court, the 2008 Plan does not release the claims of third parties in violation of the Bankruptcy Code. Rather, the 2008 Plan permits the settlement of certain claims that are owned by the Debtors against third parties, as well as the discharge of claims against the Debtors. Such settlements and discharges, however, do not amount to the discharge of debts of non-debtors in violation of the Bankruptcy Code.

Coleman contends that the 2008 Plan contravenes 11 U.S.C. § 1123(a)(4) because certain claims against the creditors are transferred to the liquidating trust, while other claims are transferred to Newco. Section 1123(a)(4), however, only requires that a plan "provide the same treatment for each claim or interest of a particular class." What Coleman complains of, however, relates to certain causes of action that the Debtors may have against certain creditors, and how these causes of action are handled. Such an argument, however, does not fall under the rubric of how *claims* of a particular class are handled. Under the 2008 Plan, all claimants in Class 7 are entitled to a *pro rata* distribution from the liquidating trust.

Coleman next asserts that the 2008 Plan impermissibly requires him to transfer to the liquidating trust certain real property owned by him through his real estate limited liability companies. The fact that Coleman may still technically own the various properties, however, ignores the dictates of the 2004 Plan. Under the 2004 Plan, Coleman was required to transfer the properties to Castle. Coleman has failed to demonstrate why he is not bound by the requirements of the 2004 Plan. As such, Coleman is not being required to transfer any real property that he was not already obligated to transfer under the 2004 Plan.

Finally, Coleman argues that the 2008 Plan violates 11 U.S.C. § 1123(a)(4) because the 2008 Plan treats Coleman and Franks differently, even though they are both members of Class 8 under the 2008 Plan. In support of this argument, Coleman directs the Court's attention to the fact that Franks is being permitted to become the sole owner of the company

that will replace Castle, while Coleman is left with nothing. However, the evidence before the bankruptcy court demonstrates that Coleman's interests as a Class 8 member are treated the same as Franks'. What Coleman's argument actually amounts to is a disdain for Franks' purchasing of the company that will replace Castle. Such an option does not stem from Franks' status as a Class 8 member. Coleman had the same opportunity of purchase as Franks. Coleman's argument is unavailing.

Therefore, the Court finds that Coleman has failed to make a "strong showing" that he is likely to prevail on the merits. Accordingly, the first factor weighs heavily against the entry of a stay order pending appeal.[2]

*Irreparable Injury*

Coleman argues that if this Court does not enter a stay, "there is a very real danger that the legitimate issues raised by Mr. Coleman on appeal will become moot." (Doc. # 4 at p. 14.) The Court does not disagree with Coleman that if a stay is not entered, Coleman's appeal is likely to become moot. Thus, the Court finds that the second factor–whether the applicant will be irreparably injured absent a stay–weighs in favor of Coleman.

*Substantial Injury to Other Parties*

The evidence before the Court demonstrates that there is a substantial risk of injury to both the Debtors and the creditors. The evidence suggests that the Debtors will be unable to continue their business operations if a stay is granted, which will also have an impact on their ability to successfully reorganize. The evidence also supports a finding that a stay will eliminate or significantly reduce Castle's ability to obtain trade credit. If a stay is entered, Castle would face a real and significant risk of the liquidation of its operating assets. ANMP asserts that it has a secured claim, but has agreed under the 2008 Plan to a general, unsecured

---

[2] It is arguable whether the Court need address the other factors after having concluded that Coleman has failed to make a "strong showing" that he is likely to prevail on the merits. *Nken*, 129 S.Ct. at 1762 ("Once an applicant *satisfies the first two factors*, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest.") (emphasis added). Nevertheless, the Court will assess the other three factors before determining whether to grant or deny Coleman's requested stay.

1 claim. Coleman disputes that ANMP has a secured claim, nevertheless, ANMP has not
2 agreed to remain an unsecured creditor if a stay is granted pending appeal. A stay would
3 inevitably result in further litigation concerning the status of ANMP's claim. Relatedly,
4 Franks' offer to purchase the operating assets of Castle does not remain viable if a stay is
5 entered. As such, the 2008 Plan itself faces a substantial risk of failing if a stay order is
6 entered by this Court.

For these reasons, the Court finds that the third factor weighs against the entry of a stay order.

*The Public Interest*

Coleman argues that the public interest weighs in favor of granting his requested stay because it would permit the preservation of his right to appeal. The Proponents assert that the public interest is best served by denying Coleman's requested stay because the "fundamental policy underlying Chapter 11" is to permit the successful rehabilitation of debtors. (Doc. # 16 at p. 49.) The Court finds that the public interest weighs in favor of the Proponents. The Court is mindful of the importance of one's right to appeal and the fact that Coleman's appeal would likely be rendered moot if the Court denies Coleman's requested stay. Nevertheless, the Court gave particular consideration of such harm under the second factor, as discussed above. Moreover, because the granting of a stay would endanger the successful rehabilitation of the Debtors by jeopardizing the 2008 Plan, the public interest is best served by upholding the underlying rationale of the Bankruptcy Code by denying Coleman's requested Stay.

**CONCLUSION**

After having given proper consideration to the four factors required in order to grant or deny a stay request, the Court finds that Coleman has failed to carry his burden of showing that the circumstances in this case justify an exercise of the Court's discretion to grant a stay.

///
///
///

Accordingly,

**IT IS ORDERED** that Taylor R. Coleman's Emergency Motion for Stay Pending Appeal (Doc. # 4) is denied.

DATED this 13th day of July, 2009.

James A. Teilborg
United States District Judge