**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dexter Distributing Corporation, et al.,, <br><br> Debtors, <br>_____ <br> Taylor R. Coleman, <br><br> Appellant, <br><br> vs. <br><br> ANMP, et al., <br><br> Appellees. <br>_____ | No. CV 09-1099-PHX-JAT <br><br> BK NO. 2:03-bk-03546-RJH <br><br> Jointly Administered as Case With: <br> 2-03-BK-03548-RJH <br> 2-03-bk-04238-RJH <br> 2-03-BK-04695-RJH through <br> 2-03-BK-04710-RJH <br> 2-03-BK-05427-RJH <br> 2-03-BK-11513-RJH <br> 2-03-BK-11515-RJH <br> 2-03-BK-04238-RJH <br> 2-07-BK-01017-RJH <br> 2-07-BK-01018-RJH <br> 2-07-BK-01019-RJH; and <br> 2-08-BK-05785-RJH <br><br> ADV. NO. 00-0000 <br><br> BAP NO. AZ-00-0000 <br><br> **ORDER** |

Taylor R. Coleman filed this action under 28 U.S.C. § 158, seeking judicial review of the Bankruptcy Court's Modified and Restated Plan of Reorganization of Debtors, Official Committee of Unsecured Creditors, ANMP, and Mark A. Franks Filed February 20, 2009

("2009 Plan"). For the reasons that follow, the Court dismisses Coleman's appeal on mootness grounds.[1]

## ANALYSIS

"Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions; our impotence to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *North Carolina v. Rice,* 404 U.S. 244, 246 (1971) (internal quotations and citations omitted). "If a case becomes moot while pending on appeal, it must be dismissed." *In re Pattullo,* 271 F.3d 898, 900 (9th Cir. 2001).

Appellees argue that the "myriad of transfers and transactions that have occurred in reliance on the Order Confirming Plan have rendered it impossible, impracticable, and inequitable for this Court to provide Coleman with any relief whatsoever." (Doc. # 54 at p. 14.) The Court agrees and finds that Coleman's appeals is both statutorily and constitutionally moot.

*Section 363(m) Mootness*

Congress has expressly limited appellate remedies in the event of reversal by precluding reviewing courts from altering or otherwise affecting the validity of any sales conducted pursuant to 11 U.S.C. § 363:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Courts have interpreted this statute to mean that when a sale of assets is made to a good faith purchaser, the reviewing court may not modify or set aside the sale unless the sale was stayed pending appeal. *See, e.g., In re Onouli-Kona Land Co. v. Estate*

---

[1] For a recitation of the pertinent facts and the procedural background, see the Court's July 13, 2009, Order (Doc. # 25).

*of Richards*, 846 F.2d 1170, 1172 (9th Cir. 1988); *In re Vista Del Mar Associates, Inc.*, 181 B.R. 422, 423-24 (B.A.P. 9th Cir. 1995). "There are two recognized exceptions to this mootness rule: (1) where the debtor has a statutory right of redemption, and (2) where other state law would permit the sale to be set aside." *In re Vista*, 181 B.R. at 425. Coleman does not argue that either of these two exceptions apply in this case. Moreover, Coleman failed to obtain a stay pending appeal. (Doc. # 25.) However, Coleman argues that the mandate of Section 363(m) does not apply because Mark Franks was not a good faith purchaser. *In re Onouli-Kona Land Co.*, 846 F.2d at 1173 ("Bankruptcy's mootness rule operates only when a purchaser bought an asset in good faith."). While the Court agrees that Section 363(m) does not apply if the sale is not to a good faith purchaser, the Court disagrees that Franks does not constitute such a purchaser.

A lack of good faith in this context has been defined as "the misconduct that . . . involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985) (quotation omitted). "The bankruptcy judge is in the best position to assess the good faith of the parties. The finding of good faith will not be overturned unless the opponent of the plan can show that the finding was clearly erroneous." *In re Stolrow's Inc.*, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) (citation omitted). After having reviewed the record, the Court finds that the record amply supports the Bankruptcy Court's determination that the sale to Franks was in good faith.

The plan was overwhelmingly supported by the undisputed creditors of the estate, which included both investors in American National Mortgage Partners and other trade creditors, and who also understood the relationship between Frank and the Debtor. The board considered other alternatives besides the sale to Franks but none of these alternatives ever materialized. The record supports a finding that Franks is the only possible buyer and, indeed, his offer was above the fair market value of the business. Moreover, the record before the Bankruptcy Court is devoid of any expert testimony suggesting that the sale was materially unfair or substantially less than the fair market value. Finally, even assuming

Franks "was an estate fiduciary subject to significantly more stringent standards," (Doc. # 62 at p. 4) the testimony before the Bankruptcy Court established that the 2008 Plan was approved by a committee of independent directors who stood to gain nothing by selling to Franks. Franks' involvement in the sale did not involve fraud, collusion, or an attempt to take grossly unfair advantage of other bidders. The Court finds that Franks was a good faith purchaser.[2]

Bankruptcy's mootness rule under Section 363(m) applies in this case. Coleman failed to obtain a stay, the purchase was made in good faith, and neither of the two exceptions articulated earlier apply. Thus, Section 363(m) precludes this Court from affecting or otherwise altering the sale approved by the Bankruptcy Court. It is not entirely clear whether Coleman is seeking relief other than to have the sale reversed or otherwise altered. In any event, even if Coleman is seeking relief other than that which would affect the sale, Coleman's appeals also fails under a constitutional mootness analysis.

*Constitutional Mootness*

An appeal from the Bankruptcy Court is constitutionally moot if it is impossible for this Court to fashion effective relief. *In re Focus Media, Inc.*, 378 F.3d 916, 922 (9th Cir. 2004); *In re Gotcha Intern. L.P.*, 311 B.R. 250, 253 (B.A.P. 9th Cir. 2004). "The party asserting mootness has a heavy burden to establish that there is no effective relief remaining for a court to provide." *In re Pintlar Corp.,* 124 F.3d 1310, 1312 (9th Cir. 1997).

---

[2] Coleman relies upon *Donovan & Schuenke v. Sampsell*, 226 F.2d 804 (9th Cir. 1955) for the proposition that a CEO of a debtor can never purchase the debtor's assets. (Doc. # 62 at p. 4.) In *Donovan*, and unlike here, the purchaser was the appointed agent of the trustee and referee at the time of the sale. In any event, in this case, the sale to Franks was approved by a committee of independent directors, and only after it was determined that Franks' offer was the only feasible alternative. To suggest that the CEO of a debtor could never purchase the debtor's assets would work a severe limitation on the bankruptcy proceedings, as is evident in this case where the only viable option was selling to Franks. The Court has already found that Franks was a good faith purchaser. Coleman's reliance upon *Donovan* is unavailing.

Appellees state that in reliance upon the unstayed Confirmation Order, the following transfers and transactions have taken place:

> 1. The transfer of all of the Acquired Assets to Castle Megastore Group ("CMG");
>
> 2. The payment by CMG of the $800,000 purchase price to the Liquidating Trust;
>
> 3. The transfer of all of the Acquired Litigation Claims to CMG;
>
> 4. The termination of all of the New Castle's employees, including the termination and cancellation of the New Castle's employee health care Plan and the termination and cancellation of the New Castle's 401(k) Plan;
>
> 5. The modification and restructure of matured loans secured by the Castle Real Properties;
>
> 6. The payment of over $500,000.00 to several administrative claimants;
>
> 7. The payment of over $180,000.00 to the Arizona Department of Revenue;
>
> 8. The filing of articles of dissolution for New Castle and Castle Realty with the Arizona Corporation Commission;
>
> 9. The creation of the Liquidating Trust;
>
> 10. The transfer of the Castle Real Properties, as that term is defined in the Confirmation Order, to the Liquidating Trust;
>
> 11. The assumption of responsibility by the Liquidating Trust to collect, administer and distribute (a) the $800,000 Purchase Price paid by CMG, (b) the proceeds from the Retained Causes of Actions, and (c) the proceeds related to the sale or transfer of the Excluded Assets;
>
> 12. The disbursement of funds to creditors, including persons holding administrative claims pursuant to terms of the Restated Plan and the Liquidating Trust Agreement;
>
> 13. The closing of store No. 18;
>
> 14. CMG has entered into an agreement with a landlord for the operation of a CMG store;
>
> 15. CMG has hired all, or substantially all, of New Castle's former employees and has acquired health care and 401(k) Plans for its new employees.

(Doc. # 54 at p. 15.)

Coleman responds to the above transactions in an attempt to demonstrate existent forms of relief that can be fashioned to preclude the rendering of his appeal moot. First, Coleman suggests that if the Court finds grounds for reversal, it can simply reverse the sale. However, as discussed above, this option is precluded by Section 363(m). Indeed, many of Coleman's proffered forms of relief rely either explicitly or implicitly on reversing the sale in violation of Section 363(m). To the extent any form of relief is premised upon reversing the sale, it must be rejected.

Next, Coleman asserts that in the event of a reversal, the employees are going to work at the same stores and perform the same duties and, hence will not experience any change if the 2008 Plan is abandoned. While practically speaking this may be true, Coleman's statements concerning the health insurance and 401(k) plans are assumptive at best. Presumably, CMG has entered into agreements with third parties for the purposes of providing health insurance and 401(k) plans. Reversing would have an effect on third parties not involved in this appeal, an end the Court must seek to avoid at this stage of the proceedings.

Coleman next contends that the distributions by the Liquidating Trust should not render his appeal moot. However, to the extent reversing the distributions made by the Liquidating Trust requires this Court to reverse the sale, Coleman's contention is unavailing.

Coleman next argues that the commencement of dissolution proceedings for New Castle and Castle Realty should have no bearing on whether or not this Court can fashion effective relief. The Court agrees with Coleman that to the extent the dissolution proceedings are not final, they have no such bearing.

Coleman asserts that the notion of closing a store as somehow precluding the Court's ability to effectively fashion relief is "nonsensical, since New Castle could have simply elected to close the store for business reasons while it was operating the business." (Doc. # 62 at p. 10.) What "could have" happened does not alter the fact that a store was closed in reliance upon the 2008 Plan and subsequent sale. Reversal of the Bankruptcy Court would make it impossible to reestablish a store that was closed in reliance upon the 2008 Plan.

Coleman next addresses Appellee's modification and restructuring of loans secured by Castle Real Properties. Coleman simply asserts that "[t]o the extent the plan in question effected a modification of any such obligations, a reversal of the order confirming the plan would merely reinstate the prior terms of the loans." (*Id.*) The Court disagrees. Even if this Court reversed the order confirming the 2008 Plan, the prior terms of the loans would not automatically be reinstated. Negotiations are necessary for the modification and restructuring of loans, and once such loans are modified, they cannot simply be reinstated without further negotiations. Further, Coleman provides no support for his assertion that the previous terms would automatically be reinstated. In any event, because the loans were modified and restructured, reversing the order confirming the 2008 Plan would affect third parties who are not participants in this appeal. *See In re Southwest Products, Inc.*, 144 B.R. 100, 105 (B.A.P. 9th Cir. 1992) ("Effective relief could not involve overturning these aspects of the sale because to do so could affect rights of third parties.").

Lastly, Coleman states that reversing the order confirming the 2008 Plan would have the effect of extinguishing the Liquidation Trust, including any of its duties and any real estate transferred to it. The Court agrees with Coleman, that to the extent extinguishing the Liquidation Trust would not affect the rights of third parties or otherwise make fashioning relief ineffective, reversal of the 2008 Plan would not be mooted on this point.

After reviewing the record, the Court finds that Appellees have carried their heavy burden of demonstrating that there is no effective relief remaining for this Court to provide. Much of Coleman's arguments center around the reversal of the sale, but as discussed earlier, the Court is precluded from taking such a course of action. In any event, even if the Court were permitted to reverse the sale, the Court cannot fashion effective relief that would not either affect the rights of third parties to this appeal or create an unmanageable, piecemeal situation for the Bankruptcy Court. *See In re Roberts Farms, Inc.*, 652 F.2d 793, 797 (9th Cir. 1981) ("Certainly, reversal of the order confirming the plan of arrangement, which would knock the props out from under the authorization for every transaction that has taken place, would do nothing other than create an unmanageable, uncontrollable situation for the

Bankruptcy Court."). The transfer of all the acquired assets and litigation claims have already been transferred. Various administrative claimants have been paid over $500,000 in addition to a payment of $180,000 to the Arizona Department of Revenue, as well as the disbursement of funds to creditors. Moreover, it is impossible for the Court to unwind the store closing, the modifying and restructuring of the loans, and the agreement with a landlord for the operation of a store. Because Coleman failed to obtain a stay, the 2008 Plan has been substantially consummated[3], and the Court cannot fashion effective relief, Coleman's appeal is moot. *In re Clarke,* 98 B.R. 979, 980 (B.A.P. 9th Cir. 1989) ("It is now well recognized that when a stay of an order confirming a reorganization plan has not been obtained and the plan has been consummated, appeals seeking to attack the confirmed plan may be precluded.").

## CONCLUSION

The Court finds that Coleman's appeal is moot under constitutional principles, as well as under 11 U.S.C. § 363(m). For these reasons, the Court is precluded from addressing the merits of Coleman's appeal.

Accordingly,

**IT IS ORDERED** that decision of the Bankruptcy Court be affirmed and that Taylor R. Coleman's Appeal from the Bankruptcy Court be denied as moot.

---

[3] The Bankruptcy Code defines "substantial consummation" as:

    (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
    (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
    (C) commencement or distribution under the plan.

11 U.S.C. § 1101(2).

**IT IS FURTHER ORDERED** that Appellees' Motion for Leave to Supplement Record on Appeal (Doc. # 40) is granted. The Clerk of the Court shall cause the documents contained at Doc. # 40 to be filed.

**IT IS FURTHER ORDERED** that Taylor R. Coleman's Motion for Leave to Supplement Designations of Record (Doc. # 60) is granted. The additional docket entries set forth in Coleman's Motion are considered designated by Coleman and part of the record on appeal.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 17th day of March, 2010.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge